## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRIPLAY, INC. and TRIPLAY, LTD., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 13-1703-LPS-CJB |
| | : | |
| WHATSAPP INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

## <u>MEMORANDUM OPINION</u>

Gregory E. Stuhlman, GREENBERG TRAURIG, LLP, Wilmington, DE

Michael A. Nicodema, Douglas R. Weider, Jason H. Kislin, GREENBERG TRAURIG, LLP, Florham Park, NJ

    Attorneys for Plaintiffs TriPlay, Inc. and TriPlay, Ltd.


Jack B. Blumenfeld, Rodger D. Smith II, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Douglas E. Lumish, Richard G. Frenkel, Yasamin Parsafar, LATHAM & WATKINS LLP, Menlo Park, CA

Gabriel K. Bell, LATHAM & WATKINS LLP, Washington, D.C.

    Attorneys for Defendant WhatsApp Inc.

March 27, 2018
Wilmington, Delaware

**STARK, U.S. District Judge:**

Plaintiffs TriPlay, Inc. and TriPlay, Ltd. ("Plaintiffs" or "TriPlay") assert, in the operative

Third Amended Complaint ("TAC"), that Defendant WhatsApp Inc. ("Defendant" or

"WhatsApp") infringes TriPlay's U.S. Patent Nos. 8,332,475 (the "'475 patent") and 8,874,677

(the "'677 patent"), both entitled "Messaging System and Method." (D.I. 80) WhatsApp has

filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds

that the patents-in-suit fail to claim patent eligible subject matter under 35 U.S.C. § 101. (D.I.

120) In a 45-page Report and Recommendation (the "Report") (D.I. 145), issued on November

20, 2017, Judge Burke recommended that the Court deny WhatsApp's motion. WhatsApp

objected to the Report (D.I. 147) ("Objections"), to which TriPlay responded (D.I. 150)

("Response"), and the Court heard oral argument on February 26, 2018 (*see* D.I. 155) ("Tr.").

The Court will sustain WhatsApp's objections and grant its motion to dismiss.

## I.   BACKGROUND

In a previous Order, the Court adopted Judge Burke's earlier recommendation and

concluded that claim 12 of the '475 patent was not eligible for patenting. At the same time, the

Court deferred ruling on the patentabilty of claim 1 of the '475 patent, as well as other claims,

concluding that claim construction was necessary before the parties' dispute could be resolved.

(*See* D.I. 52 (Report and Recommendation); D.I. 72 (Order))

There two patents-in-suit share an identical specification. Both relate to cross-platform

messaging between two devices that do not share compatible media/messaging capabilities. '475

patent at 1:5-6; '677 patent at 1:5-6. The patents describe converting an initial message into a

format and/or layout that is compatible with the destination device. '475 patent at 5:22-26,

1

16:51-65, 17:6-8. The '677 patent differs from the '475 patent by claiming the scenario in which the initial message includes a video – in that case, the video is converted into a "clickable link" for non-compatible devices. '677 patent at 23:23-51.

The parties agree that the representative claims are claims 1 and 8 of the '475 patent and claims 15 and 9 of the '677 patent. (*See* Report at 11 n.8) These claims are reproduced below.

Claim 1 of the '475 patent recites:

A system for message communication via a communication media between one or more originating communication devices assigned to a sender and one or more destination communication devices assigned to a receiver, the system comprising:

> a) an access block configured to receive, directly or indirectly, from at least one originating communication device a message having initial characteristics comprising, at least message format and an initial message layout, and to transmit the message to at least one destination communication device;

> b) a media block operatively coupled to said access block and configured to select, before transmitting, at least one message format and a message layout for each of the at least one message formats fitting to each of said at least one destination device, and to then convert at least said initial message layout to the selected message layouts, said selection and conversion being done in accordance with at least one criterion selected from a group comprising:

> > i) criterion related to message communication capabilities of the destination communication device with regard to message communication capabilities of the originating communication device;

> > ii) criterion related to message displaying capabilities of the destination communication device with regard to message communication capabilities of the originating communication device; and

> > iii) criterion related to the communication media.

Claim 8 of the '475 patent depends from claim 7, which depends from claim 6, which

2

depends from claim 1. Therefore, claims 6-8 are recited below:

6.        The system of claim 1 configured to receive a message having a layout based on a template, said template characterized by at least a unique identifier, wherein the system is further configured to recognize the unique identifier of the template, and the media block is further configured to select, before transmitting, at least one message format and a message layout for each of the at least one message formats fitting to each of said at least one destination device, and then convert the initial layout of the message to the selected message layouts, said selection and conversion being done in accordance with at least one predefined layout corresponding to the recognized unique identifier and the displaying capabilities of the destination communication device.

7.        The system of claim 6 wherein the template is selected from a group comprising initial interactive message and replying interactive message.

8.        The system of claim 7 wherein the unique identifier corresponding to at least one message is considered as a criterion for selecting and converting the message format.

Claim 15 of the '677 patent depends from claim 6. Claims 6 and 15 recite:

6.        A messaging system comprising an access block operatively coupled to a media block, wherein:

the access block is configured to receive an initial message sent by an originating communication device to a destination communication device, the initial message being characterized, at least, by message format, an initial message layout, and data indicative of at least one receiver associated with the initial message, wherein the initial message includes a video;

the media block is configured to obtain data indicative of displaying capabilities of the destination communication device and enable conversion, in accordance with a criterion related to the displaying capabilities of the destination communication device, of the initial message into an adapted message, wherein the conversion comprises:

a) providing, by the media block, a clickable icon:

i) based on the video from the initial message and

ii) clickable into an adapted version of the video, wherein the adapted version of the video is adapted to the displaying capabilities of the destination communication device, and

b) determining, by the media block, an adapted message layout, comprising the clickable icon; and

the access block is further configured to enable transmitting the adapted message to the destination communication device associated with the at least one receiver.

15. The system of claim **6,** wherein the media block is configured to convert the initial message into the adapted message, and wherein the clickable icon is adapted to the displaying capabilities of the destination device.

Finally, claim 9 of the '677 patent depends from claim 8, which depends from claim 6 (recited above). Claims 8 and 9 are reproduced below:

8. The system of claim **6,** wherein the initial message is characterized by the initial message layout based on a template, the template being characterized by, at least, a unique template identifier; and wherein the media block is further configured to provide the adapted message layout in accordance with the unique template identifier.

9. The system of claim **8** further comprising a data structure associating at least the unique template identifier with one or more predefined adapted message layouts, and wherein the media block is further configured to select the adapted message layout from among the predefined message layouts based, at least in part, on the unique template identifier and the criterion related to the destination communication device.

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(6) Motion to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires

the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315,

5

321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

**B.     Review of Magistrate Judge's Report**

As the pending motion to dismiss is a case-dispositive motion, the Court has considered the parties' objections and responses *de novo*, *see St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 691 F. Supp. 2d 538, 541-42 (D. Del. 2010); 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3).

**C.     Patentable Subject Matter[1]**

---

[1]The parties provided multiple notices of supplemental authority based on recent § 101 decisions by the Federal Circuit. (*See* D.I. 141, 143, 154, 159) The Court is also aware of other recent § 101 opinions. *See, e.g.*, *Exergen Corp. v. Kaz USA, Inc.*, 2018 WL 1193529, *4 (Fed. Cir. Mar. 8, 2018) ("The district court's conclusion that these claim elements were not well-understood, routine, and conventional is a question of fact to which we must give clear error deference. Like indefiniteness, enablement, or obviousness, whether a claim is directed to patentable subject matter is a question of law based on underlying facts. . . . [N]ot every § 101 determination contains disputes over the underlying facts.") (internal citations omitted); *Zuilli v. Google LLC*, 2018 WL 798666 (Fed. Cir. Feb. 9, 2018) (affirming PTAB decision that claims were directed to patent-ineligible subject matter); *Move, Inc. v. Real Estate Alliance Ltd.*, 2018 WL 656377 (Fed. Cir. Feb. 1, 2018) (affirming grant of summary judgment finding patent invalid for claiming ineligible subject matter); *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) (affirming denial of summary judgment that claims are directed to patent ineligible subject matter); *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299 (Fed. Cir. 2018) (affirming district court's conclusion following bench trial that patent claims were directed to patent-eligible subject matter). Even though the parties have not provided their specific analyses of all of these recent decisions, the Court has considered each of them in reaching its decision here. Notably, Judge Burke did not have the benefit of many of these

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." There are three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). "Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). First, courts must determine if the claims at issue are directed to a patent-ineligible concept ("step one"). *See id.* If so, the next step is to look for an "'inventive concept' – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself" ("step two"). *Id.* The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

At step one, "the claims are considered in their entirety to ascertain whether their character ***as a whole*** is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added); *see also Affinity Labs of*

decisions, as they were issued well after he completed his November 2017 Report.

7

*Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("*Affinity Labs I*") (stating

first step "calls upon us to look at the 'focus of the claimed advance over the prior art' to

determine if the claim's 'character as a whole' is directed to excluded subject matter").

In conducting the step one analysis, courts should not "oversimplif[y]" key inventive

concepts or "downplay" an invention's benefits. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327,

1337-38 (Fed. Cir. 2016); *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299,

1313 (Fed. Cir. 2016) ("[C]ourts 'must be careful to avoid oversimplifying the claims' by

looking at them generally and failing to account for the specific requirements of the claims.")

(quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)).

At step two, courts must "look to both the claim as a whole and the individual claim

elements to determine whether the claims contain an element or combination of elements that is

sufficient to ensure that the patent in practice amounts to significantly more than a patent upon

the ineligible concept itself." *McRo*, 837 F.3d at 1312 (internal brackets and quotation marks

omitted). The "standard" step two inquiry includes consideration of whether claim elements

"simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom Glob. Internet

Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S.

Ct. at 2359). "Simply appending conventional steps, specified at a high level of generality, [is]

not ***enough*** to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (internal quotation marks

omitted; emphasis in original).

However, "[t]he inventive concept inquiry requires more than recognizing that each claim

element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. In *Bascom*, the Federal

Circuit held that "the limitations of the claims, taken individually, recite generic computer,

network and Internet components, none of which is inventive by itself," but nonetheless determined that an ***ordered combination*** of these limitations was patent-eligible under step two. *Id.* at 1349.

The Federal Circuit recently elaborated on the step two standard, stating that "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368; *see also Aatrix*, 882 F.3d at 1128 ("While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination."); *Automated Tracking*, 2018 WL 935455, at *5 ("We have held that 'whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact.'") (quoting *Berkheimer*, 881 F.3d at 1368).

"Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1369; *see also Exergen*, 2018 WL 1193529, at *4 ("Something is not well-understood, routine, and conventional merely because it is disclosed in a prior art reference. There are many obscure references that nonetheless qualify as prior art.").

As part of the step two "inventive concept" inquiry, the Federal Circuit has looked to the claims as well as the specification. *See Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838

F.3d 1266, 1271 (Fed. Cir. 2016) ("*Affinity Labs II*") ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface."). Still, it is not enough just to disclose the improvement in the specification; instead, the Court's task becomes to "analyze the asserted claims and determine whether they **capture these improvements**." *Berkheimer*, 881 F.3d at 1369 (emphasis added). In other words, "[t]o save a patent at step two, an inventive concept must be **evident in the claims**." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (emphasis added); *see also Alice*, 134 S. Ct. at 2357 ("[W]e must examine the **elements of the claim** to determine whether it contains an 'inventive concept.'") (emphasis added); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

At both steps one and two, it is often useful for the Court to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101. *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016).

Finally, as a procedural matter, the Federal Circuit has observed frequently that § 101 disputes may be amenable to resolution on motions for judgment on the pleadings, motions to dismiss, or summary judgment. *See, e.g.*, *Berkheimer*, 881 F.3d at 1368 ("Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts. Patent eligibility has in many cases been **resolved on motions to dismiss or summary judgment. Nothing in this decision should be viewed as casting doubt on the propriety of those cases.** When there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, this issue can be decided on summary judgment as a matter of law.")

(emphasis added); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351-52 (Fed. Cir. 2014) (affirming grant of Rule 12(c) motion for judgment on pleadings for lack of patentable subject matter).

## III.    DISCUSSION

WhatsApp contends that the representative claims are ineligible under § 101 because under *Alice* step one, they are directed to the abstract idea of converting and forwarding messages, and under step two, even when considered as an ordered combination, they do not contain any inventive concept but instead recite only well-understood, routine, and conventional elements. TriPlay counters that its claims satisfy *Alice* step one because they are directed toward improving a technological process (*see* D.I. 122 at 17, 19; Report at 30), and satisfy step 2 because – even if the claims are found to be directed toward conventional elements – the ordered combination of the claimed elements is patent eligible (*see* D.I. 122 at 19; *see also* Report at 21 ("It is clear that Plaintiff's argument is *not* that Plaintiff invented any of the particular claimed components of the 'access block' or 'media block.'"); *id.* at 34 ("Plaintiff is not contending that it invented the idea of a template. Nor is it contending that it invented the concept of a template with a unique identifier.")).

As part of the previous Order, the Court determined with respect to step one that claim 12 of the '475 patent was directed to the abstract idea of "converting and forwarding messages, so that the messages are sent in a format and layout in which they can be received by a recipient." (D.I. 72 at 2-3; *see also* D.I. 52 at 25-26) The Court reached the same conclusion with respect to step one and claim 1 of the '475 patent, which is one of the representative claims that is the subject of this Opinion. In the Report now under review, Judge Burke reiterated and adhered to

the step one analysis the Court had previously endorsed. (*See* Report at 16) Hence, in recommending denying WhatsApp's instant motion to dismiss, the Report found that WhatsApp had not met its burden at *Alice* step two.

In particular, the Report focused on three features of the representative claims that may confer patent eligibility under step two: (1) the "access block/media block messaging system solution" recited in all representative claims; (2) the "message template solution" recited in claim 8 of the '475 patent and claim 9 of the '677 patent; and (3) the "video delivery/clickable icon solution" recited in claims 9 and 15 of the '677 patent. (*Id.* at 11-14) With regard to each feature, the Report recommended denying WhatsApp's motion due to the presence of underlying factual questions that prohibited a finding of ineligibility on the current record. (*Id.* at 25-26, 35, 43) Specifically, the Report found fact issues as to (1) whether the claims solve the problem of cross-platform messaging in a sufficiently particular, non-routine, unconventional way, and (2) whether allowing the claims would "preempt the 'building blocks' of research in the cross-platform messaging field and 'risk disproportionately tying up the use of the underlying ideas.'" (*Id.*)

The Court now turns to applying steps one and two to each of the four representative claims.

## A.     Claim 1 of the '475 patent

Claim 1 of the '475 patent contains a limitation claiming the access block/media block feature.[2]

---

[2]At the February 2018 argument, TriPlay stated that it is no longer asserting claims 2-5 of the '475 patent, and, thus, none of the asserted claims has just the access block/media block

### 1. Step one

Triplay makes no argument that the claim construction the Court undertook subsequent to the prior Report and Recommendation, or anything else in the record, necessitates a reevaluation of the Court's earlier step one conclusion. Therefore, for the reasons stated in the Court's prior Order (D.I. 72) and Report and Recommendation (D.I. 52), which are incorporated herein by reference, the Court concludes (again) that WhatsApp has met its burden at step one.

### 2. Step two

In his Report, Judge Burke agreed with WhatsApp that "each of the components of these blocks [i.e., the access and media blocks], *in and of themselves*, are functional and conventional." (Report at 21) (internal quotation marks omitted) However, in considering the ordered combination of those elements, the Report found that "there is a fact issue as to whether the claim (with its 'access block' and 'media block' elements and their respective operative algorithms that work together to take in, convert, and send out information) solves the problem of cross-platform messaging in a sufficiently particular, non-routine, unconventional way," and

---

features of claim 1. (*See* Tr. at 40-41) Instead, each of the remaining representative claims (claim 8 of the '475 patent and claims 9 and 15 of the '677 patent) includes both the access block/media block and an additional feature. (*Id.*) As each remaining claim contains the feature disclosed in claim 1 – the access/media block – and it was addressed in the parties' briefs and the Report, the Court will analyze it.

The Court construed "access block" as "a computer comprising a user's gateway that supports communications with communication devices and a traffic manager that is operably connected to the user's gateway and manages the message delivery within the messaging system." (D.I. 108 at 20; D.I. 118 at 2) The Court construed "media block" as "a computer comprising a message manager and a transcoder operatively connected to the message manager, the transcoder being configured to convert the message format of media items." (D.I. 108 at 26; D.I. 118 at 2)

"whether allowing representative claim 1 would preempt the 'building blocks' of research in the cross-platform messaging field and 'risk disproportionately tying up the use of the underlying ideas.'" (*Id.* at 25-26) WhatsApp objects to this analysis, contending that the "specification makes clear that the problem of – and the solutions to – cross-platform messaging was known in the prior art" and "neither the patent's specification nor TriPlay in its pleadings demonstrated or articulated how the use of the block components provided an inventive improvement over the prior art." (Objs at 3-4) (internal quotation marks omitted)

As the Report correctly explained, "the specification describes the claimed invention. But it never really seems to clearly articulate – at least with respect to the 'access block' and 'media block' components of the invention – what problems remained unsolved as to those prior art systems, and/or how the use of these components as a part of a messaging system provided an improvement over the prior art." (Report at 23) The specification repeatedly explains that the components being used are general purpose computers, processes, and devices. *See e.g.,* '475 patent at 9:67-10:2 (disclosing that embodiments of invention "may be specially constructed for the desired 20 purposes, or it may comprise a general purpose computer"); *id.* at 10:14-19 ("The processes/devices presented herein are not inherently related to any particular electronic component or other apparatus, unless specifically stated otherwise. Various general purpose components may be used in accordance with the teachings herein. . . ."); *id.* at 10:21-23 ("[E]mbodiments of the present invention are not described with reference to any particular programming language."); *id.* at 11:57-61 ("[T]he invention is not bound by the specific network architecture . . . . Those versed in the art will readily appreciate that the invention is, likewise, applicable to any network architecture facilitating messaging between communication devices.").

In light of the Federal Circuit's recent guidance on the step two inquiry, post-dating the issuance of the Report, it is clear to the Court that these portions of the specification strongly support WhatsApp's contention that the claims fail at step two. *See, e.g., Berkheimer*, 881 F.3d at 1368; *Aatrix*, 882 F.3d at 1128; *Automated Tracking Sols.*, 2018 WL 935455, at *5. Unlike, for instance, the claims involved in *Berheimer*, the specification here is silent as to what the specific claimed improvement is, how it differs from the prior art, or how any inventive feature, alone or as an ordered combination, is used in an unconventional manner. *See Berkheimer*, 881 F.3d at 1369 ("The specification explains that the claimed improvement increases efficiency and computer functionality over the prior art systems . . . . The specification describes an inventive feature that stores parsed data in a purportedly unconventional manner.").

Moreover, contrary to *Aatrix*, this gap in the specification is not filled by TriPlay's pleadings. *See Aatrix*, 882 F.3d at 1128 ("There are concrete allegations in the second amended complaint that individual elements and the claimed combination are not well-understood, routine, or conventional activity. There are also concrete allegations regarding the claimed combination's improvement to the functioning of the computer."). Instead, the only allegation in TriPlay's TAC even slightly related to an inventive concept broadly asserts that "TriPlay initiated its efforts to create a web-based content delivery platform to deliver content between devices of different manufacturers irrespective of certain capability, format and layout differences that may exist between the sending and receiving devices." (TAC ¶ 9) The TAC and specification are silent as to any problems that were still being encountered by the "various systems" that "were developed to provide a solution." ('475 Patent at 1:20-22; *see also* Report at 23) Nor do the specification or TAC disclose any specific improvement the patentees invented. Accordingly, claim 1 is

invalid as directed to ineligible subject matter.[3]

As the access block/media block does not provide the necessary inventive concept at step two, for any of the other representative claims to survive WhatsApp's motion, the Court will have to find some other limitation of the claims – or the ordered combination of all the claim's

---

[3]The Report reasons that the Examiner granted the '475 patent over Ye et al. (a prior art reference which "sounds somewhat similar to what claim 1's system does"), and therefore, fact questions may exist as to claim 1's eligibility. (Report at 25-26) The Court disagrees. "[E]ligibility and novelty are separate inquiries," and, therefore, material relevant to novelty and obviousness may not always be relevant to whether the claims were directed to eligible subject matter. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339-40 (Fed. Cir. 2017). This is especially true here, where the specification, claims, and complaint are so lacking.

Given the substantial failings of this intrinsic evidence, it would be futile to provide TriPlay an opportunity yet again to amend its complaint. As further described below, each of the representative claims lacks an inventive concept at step two. Given the intrinsic evidence (which cannot change), TriPlay cannot state a plausible claim for infringement of a valid patent, meaning yet another amendment of the complaint would be futile. *See Automated Tracking,* 2018 WL 935455, at *5 ("Our analysis of the representative claims here uncovers no inventive concept in the individual claim limitations or their ordered combination. . . . The complaint at issue has no allegations, which when accepted as true, would even create a factual issue, and [the patent] specification indicates that the components of the claimed invention are conventional."); *In re TLI Commc'ns*, 823 F.3d at 614 ("[H]ere we need to only look to the specification which describes the [components] performing basic computer functions . . . or performing functions known in the art.") (internal quotation marks omitted); Tr. at 13-14, 26-27. It would be implausible, for instance, for TriPlay to allege in a fourth amended complaint that the components of the claims are novel, when the specification repeatedly describes them as conventional.

These same failings also mean that waiting until summary judgment to assess the patentability of the claims at issue here is unnecessary, as the Court would not then be permitted to rely on extrinsic evidence to contradict the indisputable statements of the specification. *See Berkheimer*, 881 F.3d at 1368 ("As our cases demonstrate, not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry.").

elements – provides the necessary inventive concept.[4]

**B.      Claim 8 of the '475 patent**

Claim 8 of the '475 patent is directed to the "message template solution." In template-based messaging, "the media block is configured to convert the initial layout of the message in accordance with the recognized unique identifier [of the template] and the display capabilities of the receiver's device." (Report at 13)

**1.      Step one**

The Report did not make a decision as to whether WhatsApp had met its burden at step one, finding the issue to present a "close call[]." (Report at 32-33)

The appropriate inquiry under step one here is whether the focus of the claims "is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335-36. The Court agrees with WhatsApp that claim 8 is directed to the same abstract idea as claim 1 – "converting and forwarding messages, so that the messages are sent in a format and layout in which they can be received by a recipient" – rather than, as TriPlay contends, improving a technological process via the use of templates. (*See* Objs at 5; Resp at 6 & n.1)

Contrary to *Enfish*, the claims and specification here broadly cover the use of templates in a messaging system and "provide[] little specificity about exactly ***how*** it is that the message template element improved upon a problem in the prior art." (Report at 33; *see also* '475 patent

---

[4]As WhatsApp has met its burden at both steps one and two, it follows that the challenged claim is also unduly preemptive. *See Two-Way Media*, 874 F.3d at 1339 ("[W]here a patent's clams are deemed only to disclose patent ineligible subject matter under the *Alice* framework, . . . preemption concerns are fully addressed and made moot.").

at 11:8-11 ("The term 'message template' used in this patent specification should be expansively construe to include any kind of predefined user interface related to content and/or layout of transmitted and/or received message.")) While the specification asserts that the message template element is a "novel solution," it nowhere explains what that solution is. *See* '475 patent at 20:35-40. Further, while the patent asserts that "[a]mong advantages of certain aspects of the present invention is reduction in need of content analysis and ability to provide layout-related delivery instructions based on predefined rules and parameters," *id.* at 21:8-12, this efficiency is "the fundamental benefit of templates in *any* context" (D.I. 124 at 7), and the specification is silent as to how those advantages are specifically accomplished by the claimed invention. Claim 8 is "nothing significantly more than an instruction to apply the abstract idea" via the use of templates, without any "meaningful limitation beyond generally linking the use of the [system] to a particular technological environment." *Alice*, 134 S. Ct. at 2360 (internal quotation marks omitted). Accordingly, claim 8 is directed to an abstract idea under step one.

### 2. Step two

The Report stated that it could not conclude "as a matter of law at the pleading stage, that representative claim 8 does not pass muster under step two of *Alice*." (Report at 34) Specifically, the Report identified preemption questions and noted the template's "unique identifier," as described in the patent, before finding it plausible that it is "a bit more of a particular solution to the problem of cross-platform messaging." (*Id.* at 35) WhatsApp objects that the Report finds fact questions where none exist. (Objs at 6) The Court again agrees with WhatsApp.

Neither the claims nor the specification explain what is inventive about the templates or

the identifier, alone or in combination with other steps of the claims. As WhatsApp contends, "a template can just be a predefined layout – a well-understood concept that adds nothing meaningful." (D.I. 121 at19) TriPlay points to nothing in the patent to counter this notion. As the Report found, "the specification does not robustly describe how the invention's use of templates assist[s] in the message conversion process, or how it improves over prior art systems." (Report at 35) Accordingly, the Court concludes that WhatsApp has met its burden at step two and claim 8 is not directed to patent eligible subject matter.[5]

## C.    Claim 15 of the '677 patent

Claim 15 of the '677 patent recites the "video delivery/clickable icon solution," *i.e.*, replacing a video (or other media item) with a corresponding link "when a message contains a media item such as a video, and delivery or successful downloading of the video would be hindered in some way (by, for example, bandwidth)." (Report at 14)

### 1.    Step one

The Report finds the eligibility of claim 15 "better assessed at step two" because "there is evidence on both sides as to whether the claim is 'directed to' [the video delivery/clickable icon element]." (Report at 40-41) TriPlay contends claim 15 is directed to an improvement to a technological process and, thus, is eligible under step one. (Resp. at 9) WhatsApp contends

---

[5]TriPlay contends that during IPR proceedings WhatsApp failed to cite prior art of messaging systems incorporating templates to identify the content structure of messages. (*See, e.g.*, Tr. at 53) Even assuming TriPlay is correct, this does not defeat WhatsApp's showing at step two. *See generally Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) ("[T]he 'novelty' of any element or steps in a process, or even of the process itself, is of *no relevance* in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.") (quoting *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981)).

claim 15 is directed to the same abstract idea as claim 1 (converting and forwarding messages). (Objs. at 7) The Court agrees with WhatsApp.

As the Report found, "the claim could be viewed as broadly covering the concept of converting and forwarding messages, via the use of an access block and media block." (Report at 41) While the Report concludes that eligibility under step one is a "close call" due to the claim including "prominent limitations relating to the 'clickable icon'" (*id.*), the Report also recognizes that "the written description does not put the video delivery/clickable icon element front and center" and "the term 'video' is only used in the patent specification a handful of times, and then only in general terms (instead of in a discussion regarding the specific claimed solution)." (*Id.*) Moreover, "while the specification does summarize another prior art system . . . directed to 'converting a format of a multimedia message and transmitting a uniform resource locator and an access code of the converted multimedia message,' it never explains how the '677 patent attacks a challenge inherent in [the prior art]." (*Id.*) (internal citations omitted) Similar to the claims at issue in *Two-Way Media*, claim 15 requires functional results (e.g., "convert the initial message" and "adapt" the clickable icon), "but does not sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media*, 874 F.3d at 1337. Accordingly, the Court finds claim 15 directed to the abstract idea of converting and forwarding messages.

## 2. Step two

Under step two, the Report finds that the record – including a prior IPR proceeding, the patent specification, and the prosecution history – does not permit a finding that claim 15 is patent-ineligible. (Report at 42-43) WhatsApp objects, contending that "claim 15 adds nothing inventive," since "[c]onverting, forwarding, and displaying video are routine computer

20

functions," as is "the use of links to retrieve content." (Objs. at 7-8) The Court agrees with WhatsApp.

The Report finds fact issues as to "(1) whether the claim solves a problem of cross-platform messaging (involving transmission of a video) in a sufficiently particular non-routine, unconventional way, and (2) whether allowing representative claim 15 would significantly preempt this field." (Report at 43) In the Court's view, however, there is not enough in the record to render TriPlay's position on these points plausible to make these disputes the type that preclude WhatsApp from meeting its burden at this stage of the case. The claims, specification, and TAC are silent as to how the proposed inventive concept is implemented. *See RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be ***evident in the claims***." ) (emphasis added).

TriPlay had candidly acknowledged that all of the components of its invention are conventional, routine, and well-understood. (*See, e.g.*, Tr. at 42, 58) Accordingly, to succeed under step two, the ordered combination of these components must recite an inventive concept. WhatsApp has persuaded the Court that claim 15 (like the other claims considered in this Opinion) fails to do so. As addressed above in connection with step one, claim 15 fails to describe how the combination of functional results it requires (e.g., "convert the initial message" and "adapt" the clickable icon) are actually achieved. This gap in the claims is not filled by the specification, which acknowledges that clickable icons were disclosed in the prior art. *See* '677 patent at 4:9-16 (discussing prior art reference (Kim) which "discloses a system and method for making a multimedia message service compatible with a non-supported multimedia message terminal" through use of access code and resource locator). Beyond summarizing Kim, "the

specification merely makes one or two passing references to the general concept of a media item in a message being replaced by a link." (Report at 41)

Moreover, the TAC says nothing specifically related to the video limitation beyond the broad claim that "TriPlay recognized in November 2004 that user devices were limited by the fact that device manufacturers had different capabilities, formats and layouts to handle message content (*i.e.*, text, music, **video**, pictures, etc.)." (TAC ¶ 8; *see also Automated Tracking*, 2018 WL 935455, at *5 ("The complaint at issue has no allegations, which when accepted as true, would even create a factual issue, and [the] specification indicates that the components of the claimed invention are conventional.")) Absent from the claims, specification, and the pleadings is any insight into how the claimed video delivery/clickable icon feature is achieved. *See Elec. Power*, 830 F.3d at 1355 (finding limitations with broad functional language that did not explain "how the desired result is achieved" insufficient at step two).

Accordingly, the Court finds claim 15 invalid under § 101.[6]

**D.     Claim 9 of the '677 patent**

Claim 9 of the '677 patent recites all of the above features – access block/media block element, message template element, and video delivery/clickable icon element.

---

[6]While the Report looks to the IPR proceedings and the fact that claim 15 was granted over the prior art (*see* Report at 42-43), the Court does not view these as a basis to alter its conclusion as to the patent eligibility of the claim. *See Two-Way Media*, 874 F.3d at 1339-40 ("Eligibility and novelty are separate inquiries."); *Symantec*, 838 F.3d at 1315 ("[T]he novelty of any element or steps in a process, or even of the process itself, is of **no relevance** in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.") (internal quotation marks omitted).

### 1. Step one

Triplay makes no unique argument that the Court has not already considered in connection with reviewing the other claims, as to why the Court should find claim 9 of the '677 patent to survive step one. WhatsApp has met its burden at step one.

### 2. Step two

WhatsApp has further met its burden at step two. Claim 9 is not directed to patentable subject matter because claim 9 merely combines claim elements already analyzed in connection with the other representative claims, all of which were found to lack an inventive concept. There is no basis to find that the ordered combination of these various non-inventive concepts is itself, somehow, an inventive concept.

## IV. CONCLUSION

For the reasons stated above, the Court will grant WhatsApp's motion to dismiss. An order follows.